FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 0 1 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                              :

**JACQUELINE SUAREZ,**
                              :

             Plaintiff,
                              :

                              :     **MEMORANDUM DECISION AND**
                              :           **ORDER**

      - against -
                              :

                              :     15 Civ. 5330 (AMD) (RLM)

**BIG APPLE CAR, INC. and DIANE**
**CLEMENTE, individually,**
                              :

            Defendants.
-------------------------------------------------------------- X

**DONNELLY,** District Judge.

     The plaintiff, Jacqueline Suarez, filed suit against her employers, Big Apple Car, Inc. and Diane Clemente, for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.* The defendants moved for partial summary judgment on the plaintiff's claim for unpaid overtime pay, commissions, and vacation benefits under the FLSA and the NYLL, and for failure to provide wage notices and wage statements under the NYLL. The plaintiff cross-moved for summary judgment on the wage notice and wage statement claims. For the reasons that follow, the motions for partial summary judgment are granted in part and denied in part.

## BACKGROUND

     The defendant, Big Apple Car, Inc. ("Big Apple"), is a luxury car service company, headquartered in Brooklyn, New York. (Defs.' 56.1 Statement ¶ 1.)[1] Diana Clemente is the owner and president of Big Apple. (*Id.* ¶ 2; Pl's 56.1 Statement ¶ 3.) In March of 2011, the

---

[1] The facts are taken from the defendants' 56.1 Statement of Facts and Counterstatement of Facts, the plaintiff's 56.1 Statement of Facts and Counterstatement of Facts, and my review of the entire record.

plaintiff began working at Big Apple as "Director for the Drivers," and was assigned the 10:00 a.m. to 6:00 p.m. shift, Monday through Friday. (Defs.' 56.1 Statement ¶¶ 3, 6; Pl.'s 56.1 Counterstatement ¶¶ 3, 6; Suarez Dep. at 104, 166-169.) Her primary responsibilities included recruiting, registering, and training new drivers. (Suarez Dep. at 169.)

In November of 2011, the plaintiff became a "Dispatch Manager," and her shift changed to 3:00 p.m. to 11:00 p.m., Monday through Friday. (Defs.' 56.1 Statement ¶¶ 7-8.) The plaintiff stayed in this role until March of 2014, when she became the "Director of Driver's Services," and was assigned the 8:00 a.m. to 6:00 p.m. shift, Monday through Friday. (*Id.* ¶¶ 9-10.; Pl.'s Counterstatement ¶¶ 9-10.) The plaintiff stopped working at Big Apple in February of 2015. (Defs.' 56.1 Statement 11; Pl.'s 56.1 Counterstatement ¶ 11.) The parties dispute whether the plaintiff was fired or left on her own.

Throughout her employment at Big Apple, the plaintiff was paid a weekly salary of $750. (Defs.' 56.1 Statement ¶ 3; Pl.'s 56.1 Counterstatement ¶ 3.) However, the plaintiff claims that she was forced to work overtime "all the time," for which she was not compensated. (Suarez Dep. at 120.) The plaintiff estimated that there were more than 100 days where she worked overtime, because either the office was short staffed, there was a big event, or it was a busy day. (Suarez Dep. at 145; Pl.'s 56.1 Counterstatement ¶¶ 14-15.) The plaintiff alleged that she was required to work no less than sixty to eighty hours per week "on a regular basis." (Pl.'s 56.1 Counterstatement ¶ 19; Suarez Aff. ¶ 7.)

Specifically, the plaintiff alleged that she worked 60 hours the week of April 8, 2011; 80 hours the week of April 15, 2011; and 70 hours the weeks of October 6, 2012, February 2, 2013, and February 8, 2014. (Suarez Aff. ¶ 8, fn. 1.) She also alleged that in March and April of 2014 she worked approximately 65 hours a week; in June of 2014 she worked approximately 13 hours

a day on three or four occasions; in July and August of 2014 she worked approximately 55 hours a week; in September, October, and November of 2014 she worked 12 or 13 hours a day three times a week; and in December of 2014 she worked 11 or 12 hours a day two or three times a week. (Suarez Dep. at 438-39, 442-447.)   The defendants do not allege that the plaintiff never worked overtime; instead, they argue that the plaintiff did not meet her burden of estimating the amount of overtime she did work. (Defs.' 56.1 Statement ¶¶ 12-22.)

The plaintiff also maintains that the defendants owe her unpaid commission.  As part of her employment agreement, the plaintiff was entitled to receive a "finder's fee" for referring drivers to Big Apple.  (*Id.* at ¶ 27; Pl.'s 56.1 Counterstatement ¶ 27.)  All parties agree that Big Apple paid the plaintiff $22,914 in finder's fees over the course of her employment.[2]  (Defs.' 56.1 Statement ¶ 31; Pl.'s 56.1 Counterstatement ¶ 31.)  The plaintiff claims that there were an additional 57 drivers for whom she did not receive a finder's fee.  She cannot, however, name any of those drivers or specify when she recruited them.  (Suarez Dep. at 506-07, 546.)  The defendants, on the other hand, argue that they paid the plaintiff a commission on every driver she referred to Big Apple. (Defs.' 56.1 Statement ¶ 36.)

Finally, the plaintiff argues that the defendants should have compensated her for unused vacation days.  Pursuant to the Big Apple vacation policy, the plaintiff received one week of paid vacation during her first year of employment, and two weeks of paid vacation every year after; any unused vacation days carried over to the next year.[3]  (Defs.' Ex. C.)  The plaintiff says that she was entitled to "cash-out" unused vacation days when she left Big Apple.  The defendants respond that because the vacation policy does not reference a "cash-out," they were not required to compensate her for unused vacation days.  (*Id.*; Pl.'s 56.1 Counterstatement ¶ 26.)

---

[2] At oral argument, the plaintiff claimed, for the first time, that she was entitled to $59,000 in unpaid finder's fees.
[3] At her deposition, the plaintiff testified that she was entitled to three weeks of paid vacation.  (Suarez Dep. at 550.) For the purposes of this motion, it is irrelevant whether she was entitled to two or three weeks of paid vacation.

## PROCEDURAL HISTROY

The plaintiff filed her initial complaint on September 15, 2015, which she amended on January 14, 2016.  (ECF 1, 19.)  After a year of discovery, the parties cross-moved for partial summary judgment.  (ECF 37, 54.)  On October 26, 2017, I held oral argument on the cross-motions.

## DISCUSSION

### 1.  Standard of Review

Summary judgment is appropriate only if the parties' submissions show that there is "no genuine dispute as to any material fact," and therefore the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The movant has the "burden of showing the absence of any genuine dispute as to a material fact."  *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).  "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial."  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  The factual dispute has to be genuine; "[t]he non-moving party 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [its] version of the events is not wholly fanciful.'"  *Id.* (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).  Because both the plaintiff and the defendants are moving for summary judgment, I draw all inferences in the plaintiff's favor when considering the defendants' motion, and all inferences in the defendants'

favor when considering the plaintiff's motion. *Peralta v. Chromium Plating & Polishing Corp.*, No. 1:99-cv-3996, 2000 WL 34633645, at *3 (E.D.N.Y. Sept. 15, 2000).

## 2. Overtime Claims

Employers subject to the FLSA and the NYLL are required to pay covered employees who work more than forty hours in a workweek "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("Like the FLSA, the Labor Law requires that employers provide time-and-a-half compensation for their employees; work hours exceeding forty per week, and adopts the same methods used by the FLSA for calculating overtime wages."). Where "an employee is employed solely on the basis of a single hourly rate . . . the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week." *Aponte v. Modern Furniture Mfg. Co., LLC*, No. 14-cv-4813, 2016 WL 5372799, at *11 (E.D.N.Y. Sept. 26, 2016) (internal citations omitted).

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). However, "at summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). Under this "relaxed standard," the employee's burden "is not high." *Id.* "It is well settled . . . that it is possible for a plaintiff to meet this burden through estimates based on [her] own

5

recollection." *Kuebel*, 643 F.3d at 362. If a plaintiff meets her initial burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 362 (quoting *Anderson*, 328 U.S. at 687-88). This burden shifting framework is the same under the FLSA and the NYLL. *See Aponte*, 2016 WL 5372799, at *11.

The defendants admit that they did not keep records of the hours that the plaintiff worked. While they concede that the relaxed standard of proof applies to the plaintiff's claims, the defendants argue that the plaintiff has not met that standard, and that she has not significantly approximated the amount of overtime she worked between March of 2011 and March of 2014. Thus, they say that they are entitled to summary judgment on the overtime claims for that period.[4] The defendants, however, are not seeking summary judgment for overtime claims from the period of April 2014 to February 2015, or the weeks of April 8, 2011, April 15, 2011, October 6, 2012, February 2, 2013, and February 8, 2014, ostensibly because the plaintiff provided overtime estimates for those dates.

Given the relaxed evidentiary burden at summary judgment, I conclude that the plaintiff has raised a triable issue of fact about whether she performed overtime work for which she was not compensated throughout the entire period of her employment. At her deposition, the plaintiff testified that her job was a "24-hour thing," and that she worked three hours of overtime "all the time." (Suarez Dep. at 120, 167, 331.) In her declaration, she also stated that she was "required to work no less than 60 to 80 hours per week, on a regular basis," and that she "almost never"

---

[4] The defendants argue in a footnote that they are entitled to summary judgment because the plaintiff was an "exempt employee under the white-collar exemptions;" these exemptions relieve employers of paying overtime to employees hired as executive, administrative, or professional employees. *See* 29 U.S.C.A. § 213. At oral argument, the defendants conceded that this issue is not an appropriate subject for summary judgment, because there are questions of fact as to whether the plaintiff is an exempt employee.

worked less than 40 hours per week.[5]  (Suarez Decl. ¶ 7.)  While general, these allegations are sufficient to raise a reasonable inference of uncompensated work.  In *Kuebel v. Black & Decker Inc.*, the Second Circuit held that an employee who made similar estimates—that he worked more than 40 hours "just about every week" and "averaged one to five hours of uncompensated overtime each week"—met his evidentiary burden.  *Kuebel*, 643 F.3d at 364.  The court observed that "[w]hile this evidence is not precise, [the plaintiff's burden] is not onerous."  *Id.*; *Aponte*, 2016 WL 5372799, at *11 ("[A]lthough the plaintiff's testimony is not precise, it need not be under the just and reasonable inference standard.").  Courts in this district also have found that similarly vague estimates are sufficient to survive summary judgment.  *See e.g. Dervisholi v. Triangle General Contractors, Inc.*, No. 12-cv-4412, 2016 WL 6902135, at *3 (E.D.N.Y. Nov. 22, 2016) (plaintiff's allegation that he worked "six or seven days per week, working eight or more hours per day" was sufficient); *Bridal Works of New York, Inc. v. Aleksandra Bach*, No. 16-cv-1523, 2017 WL 3393967, at *6, *8 (E.D.N.Y. July 27, 2017) (plaintiff's allegation that she "regularly" worked 7 a.m. to 5 p.m. and "frequently" worked Saturdays was sufficient).

Moreover, in her declaration, the plaintiff stated the amount of overtime she worked on five specific weeks between 2011 and 2014.  (Suarez Aff. ¶ 8, fn. 1.)  She also estimated the amount of overtime she worked monthly between March of 2014 and December of 2014.  When viewing these "representative examples" in the light most favorable to the plaintiff, as I am required to do on summary judgment, I find that the plaintiff has met her burden to establish a reasonable inference that she worked overtime for the entire period of her employment.  *Cf.*

---

[5] I reject the defendants' argument that I should disregard the plaintiff's declaration because it contradicts her deposition testimony.  While her declaration may be more specific than her testimony, it is not contradictory.  *See e.g., Centrifugal Force, Inc. v. Softnet Commc'n, Inc.,* No. 08-cv-546, 2011 WL 4005271, at *4 (S.D.N.Y. Sept. 1, 2011) (considering a declaration where the declaration "does not contradict his earlier deposition testimony—it merely supplements it.").  The defendants are, of course, free to cross-examine the plaintiff at trial about circumstances under which the declaration was made, as well as any perceived discrepancies.

*Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 465 (E.D.N.Y. 2015) (denying a motion to dismiss an overtime claim because the plaintiff gave two workweeks as representative examples of unpaid hours).

The burden then shifts to the defendants to come forward with evidence of the precise amount of work that the plaintiff performed. The defendants have not offered any evidence of the plaintiff's hours. Accordingly, they have not met their burden, and their motion for summary judgment on the unpaid overtime claims is denied.

### 3. Commission Claim

Section 191(1)(c) of the NYLL, titled "Frequency of Payments," provides that "[a] commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned." N.Y. Lab. Law § 191(1)(c). The plaintiff argues that she is entitled to recover unpaid finder's fees under this section. However, "[c]ourts have held that this section is an inappropriate vehicle for . . . recovery where the gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive, and the plaintiff has not otherwise pleaded that payments were untimely." *Kone v. Joy Constr. Corp.,* No. 15-cv-1328, 2016 WL 866349, at *4 (S.D.N.Y. Mar. 3, 2016); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 547, fn. 1 (2d Cir. 2010) ("New York Courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they seek to be entitled . . . rather § 191 guarantees only that the wages . . . be paid in a timely manner.").

The plaintiff has not identified any violation of this section beyond the defendants' alleged failure to pay her finder's fees. Since Section 191(1)(c)—which focuses on the

timeliness of payments—does not provide a mechanism to challenge the amount of commission owed, the plaintiff's claim fails.

Even if the plaintiff could use Section 191(1)(c) to recover unpaid commissions, she has submitted no evidence to show that she was not paid a finder's fee for every driver she recruited. While the plaintiff testified at her deposition that there were 57 drivers for whom she was not paid a commission, she could not name a single one of those drivers or approximate the dates that she recruited them.  (Suarez Dep. at 506-07, 546, 571.)  Where a plaintiff "fails to allege even the vaguest supporting details, including the approximate timing of the transactions [or] the approximate amount of commissions allegedly owed," there can be no plausible basis to conclude that the plaintiff earned the commissions that she seeks to recover.  *See Giugliano v. FS2 Capital Partners, LLC*, No. 14-cv-7240, 2015 WL 5124796, at *15 (E.D.N.Y. Sept. 1, 2015); *Pibouin v. CA, Inc.*, 867 F. Supp. 2d 315, 326 (E.D.N.Y. 2012) (granting summary judgment on a Section 191 claim where "[r]ather than isolating the specific deals and transactions for which he supposedly should have been compensated, his papers merely cite to equally imprecise testimony from his deposition.").  Because the plaintiff has failed to create a genuine issue of material fact that the defendants owe her finder's fees, I grant the defendants' motion for summary judgment with regards to the Section 191(1)(c) claim.

### 4.  Vacation Benefits

The defendants also move for summary judgment on the plaintiff's claim that she is entitled to a payout of her accrued—but unused—vacation days.  "It is axiomatic that an employee has no inherent right to paid vacation and sick days, or payment for unused vacation and sick days, in the absence of an agreement, either express or implied." *Sosnowy v. A. Perri Farms, Inc*., 764 F.Supp.2d 457, 475 (E.D.N.Y. 2011).  However,

9

under the NYLL Section 198-c, "any employer who is a party to an agreement to pay or provide benefits or wage supplements to employees," including vacation benefits, must pay the amounts owed within thirty days of the date due. *See* N.Y. Lab. Law § 198-c(1). "This section codifies the general understanding that vacation and sick pay are purely matters of contract between an employer and employee." *Crawford v. Coram Fire Dist.*, No. 12-cv-3850, 2015 WL 10044273, at *5 (E.D.N.Y. May 4, 2015) (internal citations omitted). Thus, "a plaintiff claiming that she is owed accrued vacation pay under the NYLL must plead the existence of an agreement entitling her to vacation pay upon termination." *Litras v. PVM Int'l Corp.*, No. 11-cv-5695, 2013 WL 4118482, at *10 (E.D.N.Y. Aug. 15, 2013); *Tubo v. Orange Reg'l Med. Ctr.*, 690 F. App'x 736, 740 (2d Cir. 2017) ("An employee's entitlement to receive payment for accrued, unused vacation time upon termination of employment is governed by the terms of the employer's publicized policy.").

The plaintiff does not allege that Big Apple had a policy of paying out unused vacation days. Instead, she argues that *Gennes v. Yellow Book of N.Y., Inc.*, 23 A.D.3d 520 (2d Dept. 2005) stands for the proposition that if an employer has a policy allowing employees to accrue vacation days while they are employed—which the defendants had—it must also compensate employees for those unused vacation days when the employee leaves the company, unless there is an express policy to the contrary. The *Gennes* defendant had a policy that specified that unused vacation days were not payable upon termination, and the Second Department cited that policy in rejecting the employee's claim for unused vacation pay. *Id.* While the court also observed that "[t]he primary and dispositive issue in applying [Section 198–c(1)] is whether there was any basis for the accrual of vacation benefits," I do not read that langue to require an employer who permits accrual of vacation days to compensate an employee for unused vacation

days. Such an interpretation is counter to the weight of authority. *See e.g. Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 476 (E.D.N.Y. 2011) ("To the extent that the Labor Law does provide a basis for recovery of accrued vacation and sick day payments under section 198–c, it is only to enforce those agreements when they are made with a certain type of employee."); *Crawford*, 2015 WL 10044273 (granting summary judgment where the vacation policy did not state that employees shall be compensated for accrued vacation time).

Courts have continuously held that "[a]ll that is required by section 198-c is that an employer abide by the terms of his agreement to provide benefits." *Glenville Gage Co. v. Indus. Bd. of Appeals of New York, Dep't of Labor*, 70 A.D.2d 283, 286, 421 N.Y.S.2d 408 (1979), *aff'd sub nom. Glenville Gage Co. v. Indus. Bd. of Appeals*, 52 N.Y.2d 777, 417 N.E.2d 1009 (1980). Because the defendants did not agree to pay employees unused vacation days, they were not obligated to do so. The defendants' motion for summary judgment as to the unused vacation benefits is granted.

### 5. Wage Notices

The plaintiff alleges that that defendants failed to provide her with wage notices as required by NYLL Section 195(1). Section 195(1)(a), also known as the Wage Theft Prevention Act, became effective on April 9, 2011, and requires employers to provide all employees with a written notice of the employee's rate of pay, pay date, and hours of employment "at the time of hiring" and "on or before February first of each subsequent year of the employee's employment." N.Y. Lab. Law § 195(1). NYLL Section 198(1-b) confers a private right of action upon those employees who do not receive notice at the time of hiring. N.Y. Lab. Law § 198(1-b). However, there is no private right of action for employees who do not receive subsequent notices each February. *See Guaman v. Krill Contracting, Inc.*, No. 14-cv-

4242, 2015 WL 3620364, at *8-9 (E.D.N.Y. June 9, 2015); *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-cv-9353, 2015 WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015) ("[T]he plain language of the statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year.")

The plaintiff was hired in March of 2011, before the Wage Theft Prevention Act went into effect. Therefore, the defendants were not required to provide her with an initial wage notice. *See Severino v. 436 W. L.L.C.*, No. 13-cv-3096, 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015) ("I have identified no state or federal cases construing § 198(1-b) to allow a plaintiff who was hired before April 9, 2011, and whose wages did not change thereafter, to recover for his employer's failure to provide proper annual notice of his wages under the previous version of § 195(1)(a)."). Moreover, because there is no private right of action for employees who did not to receive annual notices, the plaintiff cannot recover under Section 195(1). Accordingly, the defendants' motion for summary judgment on the wage notice claim is granted, and the plaintiff's motion is denied.

### 6. Wage Statements

Under NYLL Section 195(3), an employer is required to give an employee, at every pay period, a wage statement that lists, among other things, the dates of work covered by the payment, the name and contact information of the employer, the rate of pay and basis thereof (*i.e.* hourly or weekly), gross and net wages, deductions, and allowances. N.Y. Lab. Law § 195(3). For all employees who are not exempt from overtime compensation, the employer is also required to list the regular hourly rate of pay, the overtime rate of pay, the number of regular hours worked, and the number of overtime hours worked. *Id.*

12

The parties agree that the plaintiff received a weekly check for $750, but was not given a paystub. (Pl.'s 56.1 Statement ¶ 7; Defs.' 56.1 Counterstatement ¶ 7; Pl.'s Ex. G.)  According to the defendants, the information on the weekly check satisfied the requirements of Section 195(3), even though it was not presented in a traditional paystub format.  Specifically, the defendants argue that the plaintiff "was well aware" that her rate of pay was $750 per week because she sent the defendants invoices.  Therefore, the defendants claim they did not need to list her rate of pay, basis of pay, or the period covered by the check.  They also claim that the plaintiff was not entitled to any deductions or allowances, and so the absence of that information on the check did not violate Section 195(3).

The defendants' arguments are not persuasive.  First, as discussed above, neither party briefed the issue of whether the plaintiff is an exempt employee.  If the plaintiff is not an exempt employee, the weekly checks she received do not satisfy Section 195(3), because they do not list the regular or overtime hours that she worked, or her rate of regular and overtime pay.  But, even assuming that the plaintiff is an exempt employee, the information on the checks does not satisfy Section 195(3) because the checks do not list the plaintiff's gross pay.  An employer who complies with many, but not all, of the requirements of Section 195(3) is still liable for violating the statute.  *See Severino v. 436 W. L.L.C.*, No. 13-CV-3096, 2015 WL 12559893, at *10 (S.D.N.Y. Mar. 19, 2015) (granting the plaintiff's motion for summary judgment where the defendant "complied with many" but not all of the requirements of Section 195(3)).  In addition, the fact that the plaintiff knew her weekly rate of pay was $750 per week does not relieve the defendants of the obligation to list the rate of pay, basis of pay, or the time period covered by the payment.  If that were true, any employer could sidestep the statute by arguing that their

employees already knew how much they were paid, the period covered by the checks, and the basis of their pay.

Accordingly, I find that the defendants violated NYLL Section 195(3). The defendants' motion for summary judgment on the wage statement claim is denied; the plaintiff's motion is granted. As a result, the plaintiff is entitled to recovery statutory damages. For violations of the wage statement requirement occurring between April 9, 2011 and February 26, 2015, Section 195(3) allowed employees to recover $100 per workweek, not to exceed $2,500. *See Franco v. Jubilee First Ave. Corp.,* No. 14-cv-07729, 2016 WL 4487788, at *14 (S.D.N.Y. Aug. 25, 2016) (citing NYLL § 198(1-d)). Because the plaintiff worked more than 25 weeks without receiving a proper wage statement, she is entitled to $2,500, the statutory maximum.

### CONCLUSION

For the reasons stated above, both motions for partial summary judgment are granted in part and denied in part. The defendants' motion for summary judgment on the unpaid commission, the unpaid vacation benefits, and wage notice claims is granted. The defendants' motion for summary judgment on unpaid overtime and wage statement claims is denied. The plaintiff's motion for summary judgment on the wage notice claims is denied. The plaintiff's motion for summary judgment on the wage statement claims is granted; she is entitled to $2,500 in statutory damages.

**SO ORDERED.**

s/Ann M. Donnelly
_____

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
         November 1, 2017

14