UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JACQUELINE SUAREZ                                    :
                                                                          No. 15-civ-5330 (AMD)(RLM)
                                Plaintiff,              :

        -against-                                              :

                                                                  :

BIG APPLE CAR, INC. and DIANE CLEMENTE,
Individually,                                              :

                                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS BIG APPLE CAR, INC. AND DIANA CLEMENTE'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION PURSUANT
RULES 50 & 59 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**AKERMAN LLP**
ATTORNEYS FOR BIG APPLE CAR, INC. AND DIANA CLEMENTE
666 FIFTH AVENUE, 20TH FLOOR
NEW YORK, NEW YORK 10103
PHONE: (212) 880-3800
FAX:   (212) 905-6404

45466400;1

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ...................................................................................................3

STANDARD OF REVIEW ..................................................................................................5

ARGUMENT…………………………………………………………………………...6

I.    PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW SHOULD BE
      DENIED BECAUSE THE JURY'S VERDICT WAS SUPPORTED BY EVIDENCE ....6

      A.    The Evidence Supports the Determination that Plaintiff's Duties in the Driver
            Recruiter and Director of Drivers Services Positions Related to the Management
            or General Business of The Company ...................................................................8

            1.    Plaintiff's Driver Recruiter Position…………………………………………8

            2.    Plainitff's Director of Driver Services Position…………….……………14

      B.    The Evidence Supports the Determination that Plaintiff's Driver Recruter and
            Director of Driver Services Duties Satisifed the Primary Duty Requirement of
            the Adminstrative Exmption Regardles of Whether Plaintiff Performed Them….15

II.   PLAINTIFF'S MOTION FOR A NEW TRIAL SHOULD BE DENIED BECAUSE
      THE EVIDENCE PRESENTED A TRIAL ENTIRELY SUPPORTS
      THE JURY'S VERDICT…...……………………………………………………20

CONCLUSION....................................................................................................................21

45466400;1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bothell v. Phase Metrics, Inc.,
  299 F.3d. 1120 (9th Cir. 2002) ...................................................................13

Cooke v. General Dynamics, Corp.,
  993 F.Supp. 56 (D. Conn. 1997) ............................................................17, 18

Cweklinsky v. Mobil Chem. Co.,
  364 F.3d 68 (2d Cir. 2004).........................................................................5

Dalheim v. KDFW-TV,
  918 F.2d 1220 (5th Cir. 1990) ...................................................................13

Davis v JP Morgan Chase & Co.,
  587 F.3d. 529 (2d. 2009)...........................................................................12

DLC Mgmt. Corp. v. Town of Hyde Park,
  163 F.3d 124 (2d Cir. 1998)........................................................................6

Drake v. Aerotek, Inc.,
  Case No. 14-CV-216(BBC), 2016 U.S. Dist. LEXIS 1597, 2016 WL 80672
  (D.Wis. Jan. 7, 2016) ...............................................................................12

Encino Motorcars, LLC v. Navarro,
  138 S. Ct. 1134 (2018)................................................................................9

Gold v. New York Life Ins. Co.,
  730 F.3d 137 (2d Cir. 2013)......................................................................17

Hamptons Locations, Inc. v. Rubens,
  640 F. Supp. 2d 208 (E.D.N.Y. 2009) .......................................................16

Harper v. Government Employees Insurance Co.
  754 F.Supp.2d 461 (E.D.N.Y. 2010) ....................................................16, 17

ING Glob. v. United Parcel Serv. Oasis Supply Corp.,
  757 F.3d 92 (2d Cir. 2014)..................................................................5, 6, 21

Krupinski v. Laborers Eastern Region Org. Fund,
  No. 15 CV 982(RJS), 2016 U.S. Dist. LEXIS 136858 (S.D.N.Y. Oct. 2, 2016)...10, 11, 12, 13

Levitt v. Tech. Educ. Servs.,
  No. 10-CV-6823, 2012 U.S. Dist. LEXIS 111195 (E.D. Pa. Aug. 7, 2012) ...................11, 13

ii

45466400;1

McKeen-Chaplin v. Provident Savings Bank FSB,
    862 F.3d 847 (9th Cir. 2017) ..........................................................................9, 12

Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.,
    833 F. Supp. 2d 282 (E.D.N.Y. 2011) ..............................................................6

Pedinol Pharmacal, Inc. v. Rising Pharm., Inc.,
    570 F. Supp. 2d 498 (E.D.N.Y. 2008) ..............................................................5

Reiseck v. Universal Commc'ns of Miami, Inc.,
    591 F.3d 101 (2d Cir. 2010)....................................................................7, 9, 12

Savage v. UNITE HERE,
    No. 05-CV-10812 (LTS)(DCF), 2008 WL 1790402 (S.D.N.Y. April 17, 2008)..............11, 13

Sir Speedy, Inc. v. L&P Graphics, Inc.,
    957 F.2d 1033 - 1039 (2d Cir. 1992) ................................................................6

Torrenegra v. Grameen Am., Inc.,
    No. 15-CV-3153 (RER), 2017 WL 1401291 (E.D.N.Y. Apr. 19, 2017)..................................12

**Statutes**

29 U.S.C. § 213(a)(1)...................................................................................7

Fair Labor Standards Act ...............................................................................1

FLSA .......................................................................................... passim

New York Labor Law ...................................................................................1

NYLL ....................................................................................................5, 6, 7

NYLL § 651(6) ..........................................................................................7

**Rules**

Rule 50...................................................................................................1, 5, 6

Rule 50(a).................................................................................................16

Rule 50(b).................................................................................................16

Rule 59...................................................................................................1

Rule 59(a).................................................................................................6

**Other Authorities**

29 C.F.R. 541.201(b) ...............................................................................................20

29 C.F.R. 541.205(a) .................................................................................................9

29 C.F.R. § 541.200(a) .............................................................................................7

U.S. D.O.L. Opinion Letter FLSA2005-45 (October 5, 2005) ......................................12

U.S. D.O.L. Opinion Letter FLSA2018-15 (January 5, 2018) ....................................12

## PRELIMINARY STATEMENT

Despite this Court flatly denying plaintiff Jacqueline Suarez's ("Plaintiff") motion for judgment as a matter of law without reservation, and then the jury finding in favor of defendants Big Apple Car, Inc. ("BAC") and Diana Clemente ("Clemente") (both, "Defendants") that Plaintiff was exempt under the administrative and/or executive exemptions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") during her employment, Plaintiff renews her motion for judgment as a matter of law under Rule 50 (with a tag along motion for a new trial under Rule 59), failing to offer anything new in this post-trial motion, except maybe a more verbose regurgitation of points made on her motion at the close of Defendants' case.

In doing so, Plaintiff ignores decades of precedent that prohibits disturbing a jury verdict in all but the most exceptional cases, and asks this Court to set aside the jury's well-reasoned verdict, entered after three days of testimony and ample deliberation, to find in her favor based solely (a) on her inconsistent, contradictory and self-serving testimony, which the jury was well within its right to trash as false (something which Plaintiff's own counsel did in summation and on this very motion), and (b) the misguided and misleading assertion that Defendants failed to present a "scintilla" of evidence in support of their exemption defense on the driver recruiter and director of services positions.  However, there is absolutely no legal or factual basis for Plaintiff's position.  Despite Plaintiff's claims to the contrary, this Court already addressed — and rejected — Plaintiff's claim that the jury had not been presented with sufficient evidence to make a factual determination on the exemption issue in connection with her driver recruiter and director of driver services positions.  In that regard, simply because Plaintiff may believe her testimony was sufficient for the jury to consider ignores the fact that the jury was specifically tasked with assessing the credibility of each witness and then permitted to determine that Plaintiff's testimony was not credible enough to find in her favor.

Plaintiff's last-ditch effort to circumvent the jury's factual determination primarily targets whether Plaintiff's driver recruiter and director of driver services positions satisfied the administrative exemption.   Plaintiff formally conceded her dispatch manager position was exempt under the executive exemption (despite hours of her own testimony to the contrary). Plaintiff then spent the entire first portion of her motion on the executive exemption, despite the fact that Defendants never alleged that Plaintiff's driver recruiter position qualified for the executive exemption, nor made that exemption the principal focus of their defense on the director of driver services position.

Plaintiff's arguments against the administrative exemption are based on two faulty assumptions: (1) Plaintiff was "producing" the company's product, *i.e.*, its drivers (which ostensibly would not satisfy the portion of the second prong of the administrative exemption requiring duties to be related to the management or general business operations of a company; and (2) Defendants were required to and did not provide evidence that Plaintiff "actually performed" her "primary duties," an alleged requirement of the second and third prong of the administrative exemption.  However, Plaintiff's two arguments fail as a matter of law and fact. First, Plaintiff's understanding of the law is wrong.   The case law, which Plaintiff ignores, makes perfectly clear that (a) recruiting has been found to be related to the management or general business operations of a company, and (b) an employer is not required to establish that the exempt primary duties are "actually performed," but rather that the primary duties are the "assigned" duties – otherwise, a normally exempt employee could escape the exemption by being a bad employee and refusing to perform her exempt primary duties when no one was looking. Second, Plaintiff's application of the facts are wrong.  There was sufficient evidence that Plaintiff did not produce a product (as Plaintiff maintains), but instead that Plaintiff's assigned (and

2

actually performed) duties were overseeing and managing the development and implementation of driver recruitment while in the driver recruiter position.  By the same account, while in the director of driver services position, there was equally sufficient evidence that Plaintiff's assigned (and actually performed) duties consisted of handling the hiring and firing of drivers, the regulatory issues with drivers, and the discipline of drivers – all duties related to the management and business operations of the company, and not producing a product.

Accordingly, for the reasons discussed below, Plaintiff's motion pursuant to Rules 50 and 59 should be dismissed.

## STATEMENT OF FACTS

In March 2011, Plaintiff walked into the office of BAC, a luxury black car company, and presented herself to BAC's president, Clemente, as an experienced recruiter seeking employment with BAC.  See Trial Transcript ("Tr.") 313:6-15.[1]  Until that point, BAC had been failing at its efforts to recruit drivers to service its high-level corporate clients, Tr. 315:19-23, and was "desperate to try to rebound." Tr. 316:1.  "After speaking with [Plaintiff] and understanding the type of training she was doing and believing what she said, that she was the very successful recruiter, and adding to that that she was really targeting a potentially untapped market," Tr. 313:22-314:4, Clemente hired Plaintiff to be BAC's first driver recruiter. Tr. 9:11-15.

Because of Plaintiff's expertise, Tr. 340:6-7, BAC entrusted her with creating and executing a recruiting strategy, giving her complete control over the recruiting program.  See Tr. 318:8-11.  To that end, Plaintiff worked without supervision, see Tr. 317:16-24, and set her own schedule, Tr. 402:7-12.  She decided where, when, and how to recruit, and determined, based on her professional judgment, that the best way to recruit new drivers was to go to the airport and hand out materials. Tr. 409:21-410:15.  She routinely spent hours each day recruiting at the

---

[1]      The entire trial transcript is attached to the declaration of B. Noonan.

airports or in the City, see Tr. 242:11-20, and these efforts allowed her to bring in "over a hundred drivers that [she] recruited," Tr. 247:10-11.

Plaintiff also spent a portion of her time training drivers, as part of and as an extension of her recruitment duties.  See Tr. 246:22-24.  As with recruiting, Plaintiff "was free from any direction or control" and "got to exercise independent discretion and judgment" when it came to training strategy.  Tr. 351:9-11.  She "went way beyond" what she was required to teach in her trainings, Tr. 321:11, adding topics that she felt would be useful to the drivers, such as how to navigate the streets, and topics that she believed would help the company retain its drivers, such as budgeting and time management. Tr. 320:3-25.  She also had complete discretion as to when to hold the training sessions. Tr. 369:1-5.

Plaintiff remained in her driver recruiter position for about seven months, from March 2011 to October 2011, before moving on to becoming the dispatch manager at BAC's Brooklyn base.  Although she spent the majority of her BAC employment, from fall 2011 to March 2014, as the dispatch manager, Plaintiff concedes that the jury's finding with respect to that position was based on sufficient evidence, and this time period is therefore not at issue.

In March 2014, Plaintiff moved from her dispatch role to become the director of driver services in Defendants' Long Island City office, where she remained until December 2014.  In that role, Plaintiff was responsible for shepherding potential drivers through the full cycle of their relationship with BAC.  Plaintiff was responsible for hiring and firing drivers and conducting vehicle inspections to determine which drivers met the company's standards and could be on the road, Tr. 193:4-6, 354:3-18.  Plaintiff also served as the company's sole representative in its dealings with the Taxi Limousine Commission ("TLC") on regulatory

matters related to drivers that were crucial to the company's business—one regulatory mistake could put the company out of business. Tr. 192:14-20, 358:18.

In or about January 2015, Plaintiff returned to being solely a recruiter, with the same duties and independence that she had in her first stint in that role. See Tr. 367:14-19. Plaintiff separated from the company about at about the end of that month. Tr. 367:20-22

Following her separation from the company in 2015, Plaintiff subsequently brought this action, asserting claims under FLSA and NYLL for unpaid overtime. At trial, the jury was presented with three days of testimony from various employees and former employees of BAC, including Plaintiff and Clemente. After considering this testimony, the jury found for Defendants that Plaintiff was exempt in all three positions. Plaintiff now seeks to have the jury's verdict cast aside in connection with her driver recruiter and director of driver services positions.

## STANDARD OF REVIEW

In a post-trial motion for judgment as a matter of law under Rule 50, "[t]he burden on a party seeking to set aside a jury verdict is extremely high." Pedinol Pharmacal, Inc. v. Rising Pharm., Inc., 570 F. Supp. 2d 498, 501 (E.D.N.Y. 2008). Judgment as a matter of law should not be granted unless there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where the evidence overwhelmingly compels a different verdict." Cweklinsky v. Mobil Chem. Co., 364 F.3d 68, 75 (2d Cir. 2004).

When evaluating a motion under Rule 50, courts are required to "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence." ING Glob. v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 97 (2d Cir. 2014). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the

45466400;1

witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. (internal citations and quotations omitted).  Where the verdict is based on an assessment of credibility, viewing the evidence in the light most favorable to the nonmoving parties, the Court cannot find that "there can be but one conclusion as to the verdict that reasonable men could have reached." Sir Speedy, Inc. v. L&P Graphics, Inc., 957 F.2d 1033, 1038 - 1039 (2d Cir. 1992).

A motion for a new trial may only be granted when, "in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd., 833 F. Supp. 2d 282, 292-293 (E.D.N.Y. 2011) (quoting DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998)). The jury's verdict must be "egregious" in order to merit a new trial.  DLC Mgmt., 163 F.3d at 134.

As with Rule 50 motions, when considering a motion for a new trial under Rule 59(a) on the ground that the jury's verdict is against the weight of the evidence, the Second Circuit has cautioned that a "high degree of deference [is] accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency." ING Glob. v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 97–98 (2d Cir. 2014) (quoting Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012)).

## ARGUMENT

## I.   PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW SHOULD BE DENIED BECAUSE THE JURY'S VERDICT WAS SUPPORTED BY EVIDENCE

In her motion, Plaintiff waives any argument, and formally concedes once and for all, that she *was* exempt under the executive exemption to the FLSA and NYLL during the period she worked as a dispatch manager from about October 2011 to March 2014 (despite her hours of

45466400;1

testimony trying to convince the world otherwise).  As a result, Plaintiff's narrowed focus is that the evidence does not support a finding that Plaintiff was exempt in her (a) driver recruiter, and (b) director of driver services positions under either the executive and/or administrative exemptions.  Given that Defendants neither suggested the driver recruiter positon fell under the executive exemption, nor that the principal focus of their defense to the director of driver's services position was that exemption – even though Plaintiff dedicated the first portion of her motion vigorously arguing against that exemption – Defendants address Plaintiff's arguments on the administrative exemption as it relates to the two positions.[2]

Under the FLSA, employers are not required to pay overtime to "any employee employed in a bona fide . . . administrative . . . capacity[.]" 29 U.S.C. § 213(a)(1).  This exemption is incorporated into NYLL. NYLL § 651(6); see also Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010).  Under the administrative exemption, employees are exempt from overtime if their (1) compensation is on a salary basis of no less than $455 per week; (2) "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).

---

[2]      Although not the focus of this opposition, it is worth noting that there was sufficient evidence presented at trial from which the jury could conclude that Plaintiff's director of driver services position qualified for the executive exemption. Specifically, Plaintiff admitted that she had two employees working under her at the Queens location, and provided the jury with their names. Tr. 48:24-49:23.  She also testified that she sent an email to Clemente with a list of duties that she would be transferring to one of her new subordinates (thereby acknowledging that she was supervising such individuals insofar as she was deciding which individuals would perform which job tasks).  Tr. 51:19-23; 84:16-25.  Clemente also testified that the director of driver services was responsible for determining whether candidates should be hired or fired, and that contrary to Plaintiff's testimony, Clemente had no involvement in hiring. Tr. 356:3-19.  The jury was entitled to credit Clemente's testimony over Plaintiff's if they felt she was more credible, and Defendants do not waive any argument that the jury could have determined Plaintiff was an executive exempt employee while the director of driver services.

Plaintiff advances two fundamentally defective and poorly articulated arguments in support of her motion.  First, Plaintiff argues that she was merely a non-exempt production employee under the so-called "Administration-Production dichotomy." This argument goes to the second prong of the administrative exemption test, *i.e.,* whether plaintiff's primary duties related to the "management or general business operations of the employer" (even though plaintiff never once makes this simple connection in her motion).  Second, Plaintiff argues that Defendants were required to, but failed to submit evidence, that Plaintiff "actually performed" her exempt duties in the two positions, which, according to Plaintiff's misleading interpretation of the law, Defendants were required to establish as part of proving the "primary duties" requirement under the second and third prongs of the exemption.   For the reasons discussed below, Plaintiff's two arguments should be rejected in their entirety and this Court should deny Plaintiff's motion.

A.   **The Evidence Supports the Determination that Plaintiff's Duties in the Driver Recruiter and Director of Driver Services Positions Related to the Management or General Business of the Company**

1.   ***Plaintiff's Driver Recruiter Position***

Despite the abundance of testimony and case law to the contrary, Plaintiff attempts to argue that her duties in the driver recruiter position were not exempt under the administrative exemption.  Plaintiff contends that her duties were merely rote production duties, *i.e.*, "plaintiff was a production employee, as opposed to an administrative, employee."  Plaintiff's memorandum of law in support of her motion ("Pl. Motion") at 11.  According to Plaintiff, she just mechanically "produced the non-employee driver" in her driver recruiter position.  Id. Plaintiff's argument, while incoherently laid out, is essentially that there was no evidence establishing the portion of the second prong of the administrative exemption requiring an employee's duties to be directly related to management policies or general business operations"

8

of the company.  Plaintiff relies on the "Administration-Production dichotomy" in support of her position, which is just an analytical tool that stems from a U.S. Department of Labor ("US DOL") interpretive regulation to assist in defining that portion of the second prong of the administrative exemption.  See Reiseck v. Universal Communications of Miami, Inc., 591 F.3d 101, 106 (2d Cir. 2010); McKeen-Chaplin v. Provident Savings Bank FSB, 862 F.3d 847, 850-852 (9th Cir. 2017).  The applicable interpretive regulation – 29 C.F.R. § 541.201(a) –  looks at whether an employee's duties are "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

The regulation and the scope of its application, however, is questionable, and, if anything, should be narrowly applied.  As an interpretive regulation, 29 C.F.R. § 541.205(a) has "only the power to persuade the courts," as opposed to be a regulatory obligation.  Riseck v. Universal Communications of Miami, Inc., 591 F.3d 101, 106 (2d Cir. 2010).  By the same token, the dichotomy has generally only been considered "determinative if the work falls squarely on the production side of the line," McKeen-Chaplin, 862 F.3d at 852, and that has been the case during the period when courts were under the impression that exemptions should be interpreted narrowly.  Id. at 850-852.  However, in April 2018, that impression was cleared up and rejected by the U.S. Supreme Court in Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018), which held that exemptions show be given a "fair", not narrow interpretation, only further calling into question the application of interpretive regulation 29 C.F.R. 541.205(a).  Id.

Notwithstanding the clearly limited application of the dichotomy, contrary to Plaintiff's misleading argument, Plaintiff neither sold nor produced a product in her driver recruiter position, and Plaintiff's Administration-Production argument is devoid of any merit. In fact,

Plaintiff's argument was *the very same argument* Judge Sullivan recently rejected as "not …
particularly useful" and of "limited utility" when applied to individuals whose primary objective
was to "recruit," "educate and train" individuals to join an organization in order to increase that
organization's "market share." Krupinski v. Laborers Eastern Region Org. Fund, No. 15 CV
982(RJS), 2016 U.S. Dist. LEXIS 136858, *6, *23 (S.D.N.Y. Oct. 2, 2016). Undoubtedly,
Plaintiff's counsel is familiar with this case, as it is the *very same case* defense counsel raised in
opposition to Plaintiff's motion for directed verdict, and Plaintiff's counsel represented the
plaintiff, in which summary judgment was granted to the employer based on the court's holding
that recruitment of individuals is an exempt job function under the administrative exemption.

Specifically, in Krupinski, the plaintiff was a union "organizer," whose "primary
objective was to '[m]otivate,' '[e]ducate,' and '[t]rain' construction workers and convince non-
union workers to join [the union], thereby increasing [the union's] market share." Id. at *6; see
also, id. at *23 (summarizing the plaintiff's primary job duties as "recruiting non-union workers
[to join the union]") Notably, as Plaintiff now attempts to do here, the plaintiff in Krupinski
(who was represented by Plaintiff's counsel in this case) attempted to invoke the very same
"Administration-Production" distinction in order to argue that the recruitment of individuals to
join an organization is not an exempt administrative job function. However, after careful
consideration of the issue, the court in Krupinski correctly acknowledged the limited use of the
dichotomy and observed that it has little use in cases outside of the manufacturing context in
particular, explaining:

> As a number of courts have observed, … the
> administration/production dichotomy *is merely illustrative* —
> unless the work *falls squarely* on the production side — and may
> be of *limited assistance outside the manufacturing context*.
>
> The present case illustrates the limited utility of the administration-
> production dichotomy in the modern service-industry context. If

45466400;1

> *rat* actions and other organizing activities [i.e., the tasks plaintiff performed to recruit individuals to join the organization] are characterized as [the union's] main 'product,' then Organizers like Krupinski may seem analogous to employees on a manufacturing production line. If, as seems more accurate, [the above-referenced recruitment] and organizing activities are characterized as functional services that [the organization] — as [the organization's] recruiting, marketing, public relations, and advocacy arm — provides to [the organization], then Organizers are more analogous to staff who 'assist[] with the running or servicing of [a] business.' ... Since the Court does not find the administration/production dichotomy particularly useful in this case, it 'will not strain its application to fit it to this set of facts… Instead, the Court will focus on whether [plaintiff] 'perform[ed] work directly related to assisting with the running or servicing of [the organization and, by extension, [its] business.

Id. at \*22-23 (internal citations omitted) (emphasis added).  Once the court in Krupinski properly disregarded the "Administration-Production dichotomy" as irrelevant, it held that the plaintiff's job duties – "recruiting and training" individuals to join the organization by whom he was employed – satisfied the second prong of the administrative exemption because such tasks were "directly related to management or general business operations." Id. at \*24.

Notably, the court's decision in Krupinski is in line with cases in which courts have held that recruiting, whether for a union or college admissions department, is a job function that satisfies the second prong of the administrative exemption, in addition to U.S. DOL Opinion Letters that have concluded similarly. See e.g., Savage v. UNITE HERE, No. 05-CV-10812 (LTS)(DCF), 2008 WL 1790402 (S.D.N.Y. April 17, 2008) (granting summary judgment for employer on grounds that an employee's primary job duties were to recruit individuals to join her organization); Levitt v. Tech. Educ. Servs., No. 10-CV-6823, 2012 U.S. Dist. LEXIS 111195, \*16-23 (E.D. Pa. Aug. 7, 2012)(granting summary judgment to employer on plaintiff's FLSA claim on the grounds that plaintiff was exempt under the administrative exemption because her primary job duties consisted of recruiting students to join the college by whom she was

11

employed, which satisfies the second prong of the administrative exemption); <u>Torrenegra v. Grameen Am., Inc.</u>, No. 15-CV-3153 (RER), 2017 WL 1401291, at *6 (E.D.N.Y. Apr. 19, 2017) (employee whose primary duty was to assess, recruit, train, advise and retain potential members was exempt); <u>Drake v. Aerotek, Inc.</u>, Case No. 14-CV-216(BBC), 2016 U.S. Dist. LEXIS 1597, *15, 2016 WL 80672 (D.Wis. Jan. 7, 2016), (holding that plaintiff's job duties as a recruiter not only satisfied the second prong of the administrative exemption under the FLSA, but the more stringent state statue as well); <u>see also</u>, U.S. D.O.L. Opinion Letter FLSA2018-15 (January 5, 2018) (employee exempt because "primary duties of developing and implementing strategies for recruiting and maintaining relationships with [product] demonstrators, deciding how much effort to devote to expanding the pool of demonstrators, ensuring that a demonstrator executes a contract before conducting an event, and receiving and resolving demonstrator complaints, <u>all</u> directly relate to the functional areas of personnel management and human resources"); U.S. D.O.L. Opinion Letter FLSA2005-45 (October 5, 2005) (employees with a "primary duty of recruiting, hiring, and managing the temporary labor pool of Company X's clients . . . performed work in the functional areas of personnel management, human resources, and labor relations" and therefore met the requirement that the work be directly related to the management or general business operations of the employers' clients).

The *only* cases Plaintiff cites in support of her motion do not contradict this assertion and, in fact, do not address recruiting at all, even though Plaintiff's counsel certainly knew of at least one case dealing with recruitment in in connection with the administrative exemption – <u>Krupinski</u> – having been on the losing end of that case. <u>See, e.g.</u>, <u>Reiseck v. Universal Communications of Miami, Inc.</u>, 591 F.3d 101 (2010) (advertising salespeople); <u>Davis v JP Morgan Chase & Co</u>., 587 F.3d. 529 (2d. 2009) (underwriters); <u>McKeen-Chaplin v. Provident</u>

12

Savings Bank, FSB, 862 F.3d 847 (9th Cir. 2017) (same); Bothell v. Phase Metrics, Inc., 299 F.3d. 1120 (9th Cir. 2002) (engineers); Dalheim v. KDFW-TV, 918 F.2d 1220 (5th Cir. 1990) (local news producers).

Unlike the plaintiffs in each of the cases cited by Plaintiff, she was neither a salesperson nor a heavily supervised producer of widgets. Rather, the testimony regarding her duties closely matched the duties that courts specifically have found to be exempt in the recruiting cases. In fact, if "drivers" is substituted for "members" in Savage, Krupinski, or Torranegra, or for "demonstrators" in FLSA2018-15, or students in Levitt, these cases directly describe Plaintiff's duties. Consider, for example, the following language from Savage, with that change implemented: "as a representative of [company] who promoted her employer and increased [the company's] [_driver_] base, Plaintiff's duties related to the running and servicing of [the company's] business. 2008 WL 10812 at *8. The Savage court also noted that the time the plaintiff spent distributing leaflets and collecting union cards did not change the analysis because both task related to her primary duty of bringing in members. Id. At *6. The same is true for Plaintiff's claims that she spent time passing out leaflets and registering drivers. Thus, as in Savage, Plaintiff's primary duty was clearly administrative.

Moreover, in performing such recruiting duties, the evidence presented at trial established that Plaintiff did far more than rote duties. Rather than "merely replace the company's prior recruiting efforts," as Plaintiff claims, Pl. Motion at 12, Plaintiff was tasked with leading, overhauling, and running them. According to Clemente, Plaintiff was hired as an expert, see Tr. 340:6-7, because the company had been failing at its recruiting efforts and was "desperate to try to rebound," Tr. 316:1; see also Tr. 314:21-23 ("I think the only reason we advertised was to let our own drivers know we were still in business. It really was very lackluster in results."); Tr.

315:19-23.  Because Plaintiff was hired for her expertise, she had complete discretion to create the company's recruiting strategy as she saw fit.  See Tr. at 410:11-13 (Clemente: "If I knew how to recruit, I would not have hired [Plaintiff]. I did not tell her how to recruit.").  As a result, Plaintiff had independent decision-making authority over (a) who to recruit and/or target, (b) what tactics to use in order to recruit the candidates she so identified, (c) how she should present the company to such candidates in order to convince them to join the organization, (d) which publications, geographic locations, and so forth that she should focus her recruitment efforts, (e) the content and substance of the recruitment advertisement or "pitch" to the candidates on why they should join BAC, and (f) the extent to which follow-up efforts were utilized to convince an individual who was on the fence to join the organization – to name just a few.  Tr. 409:21-410. This evidence provides more than the "scintilla of evidence" that Plaintiff so desperately seeks in her motion.

Accordingly, this Court should dismiss Plaintiff's motion as to the driver recruiter position on this ground alone.

### 2.    *Plaintiff's Director of Driver Services Position*

When it comes to her director of driver services position and the Administration-Production dichotomy, Plaintiff says next to nothing in her failed attempt to strain the reach of the dichotomy to meet her ends.  Plaintiff attempts to paint a bleak picture of her months as the director of driver services spent making coffee, cleaning, and performing rote tasks, which she argues, in summary fashion and without any explanation, were "directly related to production" of drivers.  Pl. Motion at 15.  Regardless of Plaintiff's inept analysis, Plaintiff fails to once again realize that any contrary self-serving testimony of hers is irrelevant to not only this motion (given its standard of review), but also to the jury's determination, given that it had every right to disregard her inconsistent and contradictory testimony.

14

Nevertheless, just as with her driver recruiter position, there was ample evidence at trial, which Plaintiff turns a blind eye to, that supported the jury's determination that Plaintiff's director of driver services position was related to the management or general business operations of the company under the second prong of the administrative exemption.  As Clemente testified, driver services was a critical department that the company maintained since shortly after its inception and even purchased its own building in Long Island City in the early-2000's, which only handled driver services.  Tr. 354:3-18.  Clemente identified three primary duties of the director of driver services position:  (1) hiring and firing drivers, (2) ensuring driver regulatory compliance with the TLC, and (3) enforcing company polices and disciplining drivers. Tr. 354:3-18.  Moreover, despite Plaintiff's selective reading of the trial transcript, Plaintiff also acknowledged at trial that while she was the director of driver services, she engaged in such duties, including enforcing policies, disciplining drivers, and handling regulatory matters with the TLC.  Tr. 195, 247, 358.  Cleary, there was sufficient evidence presented at trial for the jury to conclude that Plaintiff's duties as the director of driver services, which were equivalent to a human resources director, related to the management or general operations of the company, thereby satisfying the necessary portion of the second prong of the administrative exemption.

Accordingly, this Court should dismiss Plaintiff's motion as to the director of driver services position on this ground alone.

**B.** **The Evidence Supports the Determination that Plaintiff's Driver Recruiter and Director of Driver Services Duties Satisfied the Primary Duty Requirement of the Administrative Exemption Regardless of Whether She Performed Them**

In her motion, Plaintiff repeatedly raises the preposterous argument that Defendants were required to establish at trial that Plaintiff "actually performed" her driver recruiter and director of driver services duties in order to satisfy the primary duty requirement of the administrative

15

exemption. *However, Plaintiff never raised this argument in her initial motion for judgment as a matter of law*. <u>See</u> Tr. 470 to 479.   As a result, Plaintiff has waived the argument because a post-trial motion for judgment as a matter of law under Rule 50 is "limited to those grounds that were specifically raised in [a] prior [Rule 50(a) motion]; *the movant is not permitted to add new grounds after trial*." <u>Hamptons Locations, Inc. v. Rubens</u>, 640 F. Supp. 2d 208, 212–13 (E.D.N.Y. 2009) (citing <u>Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 286 (2d. Cir. 1998)) (emphasis added).

Notwithstanding such failure, Plaintiff attempts to overturn the jury's verdict by advancing an argument that is facially absurd: namely, that even if an employee's primary duties clearly involve the exercise of independent judgment on matters directly affecting the company, and thus, satisfy the administrative exemption, that the employee can side-step the exemption by simply testifying at trial that she actually failed to perform her job duties or performed them in a poor manner.  Specifically, Plaintiff relies on <u>Harper v. Government Employees Insurance Co.</u> 754 F.Supp.2d 461 (E.D.N.Y. 2010) in support of her argument that only the primary duties she "actually performed" can be used to determine whether she was an exempt employee and that Defendants' testimony regarding her assigned duties and the description of her job is therefore insufficient.  However, Plaintiff's application of the law is wrong.

Plaintiff's hyper-focus on the words "actually performed" is deceptively misleading. <u>Harper</u> does not actually address the distinction between job title and actually performed duties. Indeed, the Second Circuit's articulation of this distinction leaves out the word "performed" entirely. <u>Gold v. New York Life Ins. Co.</u>, 730 F.3d 137, 145 (2d Cir. 2013) (explaining that "the determination of an employee's exemption status must be based on the specific employee's actual primary duties, not on his or her title or position.").  Cases that do address this distinction,

16

however, make clear that the distinction at issue is not between the duties an employee is *required to perform* and those she *actually performs*, but rather between the duties typically associated with a certain job title and the assigned duties of a particular plaintiff who held that title.  See, e.g., Cooke v. General Dynamics, Corp., 993 F.Supp. 56 (D. Conn. 1997).  Stated differently, an employer has to establish that an employee's assigned primary duties are exempt job duties, not that the employee actually performed those assigned primary duties.

Unlike Harper, Cooke actually addresses this situation where there is a dispute over the actual assigned job duties.  There, the plaintiffs' deposition testimony regarding their assigned job duties conflicted with their employer's evidence as to what their assigned duties were and the employer's job description, not whether the plaintiffs actually performed their assigned duties or those in the job description.  See 993 F.Supp. at 62.  Rather than disregard the employer's evidence, the court explained that while "defendant's descriptions of plaintiffs' job assignments and responsibilities in their review forms [we]re not controlling," these items nonetheless "may be evidence of plaintiffs' job duties."  Id. at 61.  Because the discrepancy between the plaintiffs' job descriptions and the plaintiffs' testimony regarding their assigned duties created a genuine issue of material fact, the Cooke court refused to grant summary judgment.  Id. at 64.

In her motion, Plaintiff argues that Clemente's testimony regarding what Plaintiff was supposed to be doing in each of her positions is insufficient because Clemente did not actually state that she witnessed or otherwise knew Plaintiff actually performed those duties, and that only Plaintiff's own testimony regarding the duties she actually performed can be considered by the jury.  This is not the law.  As in Cooke, Clemente's testimony describing Plaintiff's duties and the job description serve as valuable evidence that the jury may weigh against Plaintiff's testimony regarding her assigned duties in making their factual determination regarding her

primary duties.  Moreover, Plaintiff offered a wide variety of testimony concerning her duties — some of which matched her job description and some of which did not.  Based on the evidence, the jury had every right to reject Plaintiff's version of what her assigned primary duties were in the driver recruiter and director of driver services positions, and infer that Plaintiff was performing the duties of her assigned jobs (which is not the requirement of the exemption under the law), that those were her assigned primary duties, and that she performed no other duties.

If Plaintiff's "actually performed" standard was valid and applied, it would lead to an absurd result: an otherwise exempt employee could make herself overtime eligible by simply refusing to perform the portions of her job that were exempt.  In the same vein, using Plaintiff's made-up standard, an employer would literally have to surveillance its employees every move in order to be able to testify as to what the employees did each hour of each day.  This, too, is nonsensical.  An employee who fails to adhere to her own exempt assigned primary duties and job description is not an overtime-eligible employee, but instead is simply a bad employee.

Regardless, there was sufficient evidence regarding Plaintiff's assigned driver recruiter and director of driver services duties, which she also performed.  When she was hired as the driver recruiter, Clemente made clear in her testimony that Plaintiff's assigned duties was to oversee and implement the company's driver recruitment strategy and tactics. While Plaintiff attempts to save her failed case by arguing that Defendants were required to show she performed such duties, which is not the law, Plaintiff nevertheless admits that recruiting was the duties she was hired to perform, see Tr. 185:23-25 — and that she did, in fact, perform those duties. Indeed, Plaintiff testified that (a) she routinely spent hours each day recruiting at the airports or in the City, see Tr. 242:11-20, (b) these efforts allowed her to bring in "over a hundred drivers that [she] recruited, Tr. 247:10-11, and (c) she frequently conducted training sessions, see Tr.

246:22-24,  Clearly, there was sufficient evidence for the jury to conclude that recruiting was Plaintiff's primary assigned duties and, to the extent the jury found her not credible, they were also entitled to conclude that these were Plaintiff's only duties.

Although Plaintiff attempts to minimize the importance of her assigned director of driver services duties or that she actually performed them, there was also sufficient evidence at trial as to her assigned duties in that position, which the jury was well within its right to credit. As Clemente's testimony highlights in pertinent part:

> Driver Services is the hub that handles very important aspects of driver recruitment, so it's the decision-making as to whether or not a driver should be affiliated with us. It is totally responsible for regulatory compliance. If we provide service by drivers and vehicles that are not appropriately registered, licensed and insured, we could lose our entire business. To the extent that drivers need to be disaffiliated or fired, that potentially would be handled by driver services as well. They do inspections of the vehicles to make sure that the vehicle is in the right shape to deliver service to our customers. So it's pretty much -- to use like employee terms, even though they are independent operators, it's hiring, firing, disciplining, to a certain extent some of that comes from dispatch as well, and extremely important is regulatory compliance.

Tr. 354:3-18.  Plaintiff again attempts to discredit Clemente's testimony by arguing that Defendants were required to provide "a complete record of all tasks performed, how much time spent on each task, and the specific components of each task." Pl. Motion at 14.  But this is not the law.  Yet, even it were, Plaintiff's claim that Clemente's testimony was "generic" and did not reflect the duties she "actually performed," Pl. Motion at 16, is undermined by the fact that Plaintiff's own testimony mirrors Clemente's with respect to the most significant tasks she was required to perform.  Plaintiff and Clemente both testified that Plaintiff conducted inspections and could fail drivers who did not meet the company standards.  Compare Tr. 195:6-8, 195:21-196:3 with 350:2-16 (Clemente).  The two diverge only in that Plaintiff insisted at trial that she had no authority to take drivers off the road who failed inspection, Tr. 195:9-24, while Clemente

45466400;1

testified that Plaintiff had unfettered authority to do so, Tr. 359:8-18. The jury had every right to credit Clemente's testimony over Plaintiff's. Similarly, both testified that Plaintiff served in the critical role of the company's *sole liaison* with the TLC to handle all of the crucial regulatory issues on behalf of the company, which alone is a recognized exempt duty under the administrative exemption. Tr. 192:14-20; 29 C.F.R. 541.201(b)("regulatory and legal compliance" are an example of exempt administrative duties). Again, Plaintiff attempted to minimize the significance of this role, Tr. 247:17-23, whereas Clemente explained that an error by the company's TLC representative – Plaintiff – could cost the company its base license, Tr. 358:18. Both testified that Plaintiff had the authority to (and did) negotiate on behalf of the company with one of its largest clients, Goldman Sachs, regarding a policy change, Tr. 366:23-367:13 (Clemente); 166:5-166:24 (Plaintiff), but again, Plaintiff attempted to minimize the significance of this interaction, Tr. 166:24, whereas Clemente highlighted the seniority required to contact such an important client, particularly with respect to a policy change, Tr. 366:15-367:13. This testimony also goes well beyond the "scintilla of evidence" that Plaintiff so desperately complains about in her motion, and the discrepancies between the two accounts simply create a credibility determination that the jury was entitled to make.

Accordingly, there is no basis on which to disturb the jury's verdict, and Plaintiff's motion should be denied on this ground too.

## II. PLAINTIFF'S MOTION FOR A NEW TRIAL SHOULD BE DENIED BECAUSE THE EVIDENCE PRESENTED AT TRIAL ENTIRELY SUPPORTS THE JURY'S VERDICT

For all the reasons set forth above, it is clear that ample evidence was presented at trial to support the jury's verdict. Plaintiff has provided the Court "no basis on which to conclude that the jury's verdict was "egregious," "seriously erroneous," or "a miscarriage of justice." ING Glob. v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 99 (2d Cir. 2014). Moreover,

45466400;1

given that the finding that Plaintiff was exempt "turned to a large extent on the credibility of the witnesses who testified before the jury, the finding and the verdict which followed are particularly ill-suited to after-the-fact second guessing." Id. Accordingly, Plaintiff's motion for a new trial should likewise be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion in its entirety and award such other and further relief it deems equitable and just.

Dated:        New York, New York
              June 11, 2018

                         AKERMAN LLP

                         By:  ___/s/ Bran Noonan_____
                             Bran C. Noonan, Esq.
                             Vincent M. Avery, Esq.
                             Melissa Overbeck, Esq.
                         Attorneys for Defendants
                         666 Fifth Avenue, 20th Floor
                         New York, New York 10103
                         212-259-6430